## PRICE vs. SIMMONS, Adm'r.

1. A judgment that has been reversed, is a mere nullity.
2. Where a decree was rendered by the Court of Probate against an administrator in favor of a succeeding administrator *de bonis non*, and was reversed, on writ of error to the Appellate Court, after the money had been collected under execution from one of the administrator's securities, and had been distributed among the legatees, and the security afterwards brought suit against the administrator *de bonis non* to recover the money, *It was held:*

   That the administrator, on another settlement in the Court of Probate pending the action in the Circuit Court, was not entitled to a credit for the amount collected on the former decree.

ERROR to the Court of Probate of Benton.

On the 17th January 1845, a decree was rendered by the Court of Probate of Benton County, against William C. Price, as administrator of William Burns, in favor of James L. Simmons, as administrator *de bonis non* of said Burns, for the sum of $1982 69. An execution against Price having been returned "no property found," another execution was issued against him and his securities, and under this the amount of the decree was collected from Thomas R. Williams, one of the securities; and the money so collected was distributed by said Simmons among the legatees. Afterwards, the decree of the Court of Probate was taken to the Supreme Court by writ of error, and there reversed, (18 Ala. 406;) and Williams then brought suit against Simmons, in the Circuit Court of Tallapoosa, to recover the amount paid by him on the decree.

Pending this suit in the Circuit Court, Price was cited to appear before the Court of Probate, and make another settlement of his administration. He appeared, and insisted that, on the foregoing state of facts, he was entitled to a credit or off-set, for the amount so collected from Williams; but the court again rendered a decree against him for said sum of $1982 69, and this decree is now assigned for error.

The above stated facts are recited in the judgment entry, as having been "agreed and admitted by the said W. C.

Price," and it is also recited therein, that this was "the only testimony given in evidence."

RICE & MORGAN, for plaintiff in error:

1. The question is, can Price, the administrator in chief, show, in defence of the petition of Simmons, administrator *de bonis non*, that Williams, the security of Price, has paid up and discharged all of Price's liabilities to the estate, and that the money has been paid over to the distributees in the course of administration.

A satisfaction by a stranger, is a good satisfaction. Miller v. McLane, 10 Ala. 857.

2. The replication made by Simmons, that Williams has sued him for the money paid on the reversed judgment, is not good: 1. It merely presents the fact that a suit for the money is pending. McLane v. Spence, Adm'r. 11 Ala. 172. 2. The replication is bad for a departure, and is frivolous. Suppose issue had been joined upon it, would the judgment be upon the merits? Suppose the defendant should rejoin, that Simmons was not liable to Williams, having paid out the money without notice; That would bring up a new case and a collateral question. The replication must be bad, because it assumes that Simmons had no right to collect the money from Williams. McLane v. Miller, *supra.*

3. There is no hardship in this case. Simmons could have protected himself by refunding bond. If he chooses to take all the risk of the collection of the money from Williams, and the payment to the distributees, he cannot be heard to say now, that Williams has sued him for the money. That would be to make his rights depend upon the volition of Williams. What if Williams had not sued? Could Simmons say, "Williams ought to sue me and recover this money?" This is the very question presented by the replication set up by Simmons in this case.

4. There is as much hardship on Price as there could be upon Simmons. Suppose this judgment is affirmed, Price must pay it, and Williams has paid it; Price is still liable to Williams for contribution. Price and Williams never could have protected themselves against the conduct of Simmons; he invokes the powers of the court (unlawfully,) to collect

the money, and now he asks Price and Williams to have faith in him, that he will repay the money to Williams. He says, "the reversal of the decree puts the parties in *statu quo*, as to their legal rights, and I will put Williams in *statu quo*, if I should be unable to defeat him, and should have the money to satisfy the judgment when rendered. In the mean time the court will take judicial notice, that I intend to put him in *statu quo*, (when I get able and willing to do so,) and that, therefore, Williams is in *statu quo*."

FALKNER, A. J. WALKER and J. B. MARTIN, *contra:*

1. It is insisted for defendant in error, that the reversal of the judgment or decree entitled Williams to recover the money back, and that plaintiff in error cannot claim the payment as a satisfaction of the demand without the consent of Williams, which consent was not shown. See this case in 18 Ala. 405; Judge of Benton Co. Ct. v. Price, Adm'r. 6 Ala. 36.

2. If Williams has a right of action against Simmons for the money collected on the execution, then Price has no right to claim the payment as a payment made by him, or for his benefit.

3. A security has the right of action against his principal for money paid for him, as security; and until that right of action is extinguished by the principal, by actual payment of his liability to his security, he cannot be heard to set it up.

4. If the payment to Williams is a satisfaction of the demand from Price, then Williams has no right of action against Simmons, and if the court should be of this opinion, we have no objection to a reversal of the decree, and the proper decree being rendered in this court; and in that event, an error which intervened in the Probate Court, prejudicial to the defendant in error, should be corrected, viz: interest should be allowed on the sum due from the 17th day of January, 1845. But if the assent of Williams has not been obtained for this purpose, he not being a party to the record, this cannot be done.

5. When execution issues against Price in this case, and is returned "no property," and an execution then issues against the securities on his official bond, Williams can then set up the former satisfaction to extinguish his liability, provided he

has not in the mean time collected the money back from Simmons.

PHELAN, J.—Wm. C. Price was administrator, with the will annexed, of Wm. Burns. He was succeeded in his administration by James L. Simmons, as administrator *de bonis non*, by whom he was cited before the Orphans' Court of Benton to make final settlement; and upon such final settlement before said Orphans' Court, Price was found to have in his hands, of the funds of the estate, the sum of nineteen hundred and eighty-two dollars and sixty-nine cents, ($1982 $\frac{69}{100}$) after deducting all just credits and his commissions. For this sum, there was a decree rendered against him by the Orphans' Court, in favor of said Simmons, administrator *de bonis non*, in January, 1845. Upon this decree there was an execution issued against Price, which was duly returned "*nulla bona*." An execution then issued against said Price and his securities on his official bond as sheriff, (he had been administrator in virtue of his office as sheriff,) of whom Thomas R. Williams was one, and the amount of the execution was collected out of said Williams, and after being so collected, was paid over by Simmons, the administrator *de bonis non*, to the legatees of the testator, Wm. Burns.

After all this, the decree of the Orphans' Court in favor of Simmons, administrator *de bonis non*, against Price, administrator, was taken, by writ of error, to the Supreme Court, where it was reversed. 13 Ala. 749. Since then, Williams has sued Simmons in the Circuit Court of Tallapoosa, to recover back the money paid by him on the execution which issued against him as a security of Price on the decree of the Orphans' Court of 1845, which has been reversed, and this action was pending at the time of this trial below in the Probate Court.

The foregoing state of facts was shown to exist, upon a new citation issued at the instance of Simmons, administrator *de bonis non*, against Price, as administrator of Burns, to make final settlement, on the 22nd day of August, 1850, and brought to a hearing at the November term of said Probate Court, 1850.

Upon this proof, the Probate Court decreed anew in favor

of Simmons, administrator *de bonis non,* against Price, admintrator, for the sum of $1982 $\frac{62}{100}$, admitted to be due as aforesaid, and for which the former decree, which Williams, as security, paid, and which was afterwards reversed, was originally rendered. This decree is assigned for error.

The plaintiff in error, Price, insisted before the Probate Court, that the payment of the money on the former decree by Williams, and the appropriation of it by Simmons to the payment of the legatees under the will of Burns, ought to be regarded, in law, as a satisfaction of the sum now claimed of him by Simmons.

There is nothing to protect Simmons from a recovery by Williams, in his action in the Circuit Court of Tallapoosa, for the money paid to him by Williams under the decree of the Orphans' Court against Price, which was afterwards reversed. A judgment that has been reversed, is regarded as a nullity. It is the same as if there had been no judgment. Dupuy v. Roebuck, 7 Ala. 484; Simmons v. Price, 18 ib. 405.

If Williams can recover this money back from Simmons, and Price can claim the advantage of the same money in satisfaction of the demand against him, because Simmons has paid the legatees of Burns with it, the result follows, that Simmons is made to pay the legatees out of his own pocket, and Price and Williams go clear of their just liabilities. Such a consequence is too manifestly unjust to be tolerated for a moment, and satisfactorily shows the decision of the court, refusing to allow the same, to be correct.

As long as Williams persisted in his action against Simmons to recover back the money he paid on the decree which was reversed, Simmons should be allowed to pursue afresh his demand against Price in the Probate Court, and that court properly decided to take no notice of the payment of the legatees by Simmons.

There is no error in the decree of the Probate Court, and the same is affirmed.

CHILTON, J., did not sit in this case.