Barringer et al. v. Burke.

BARRINGER et al. *vs.* BURKE.

1. Matters arising subsequently to the filing of the original bill cannot be added by way of amendment, but must be brought to the view of the court by supplemental bill.

2. When lands sold under execution are purchased and held by the trustee of a *feme covert* in trust for her, an offer by a judgment creditor to redeem under the statute, is sufficient, if made to the trustee.

3. An offer to redeem by a creditor who has a judgment then in force, which is afterwards reversed on error by the Appellate Court, does not entitle him to redeem under another judgment recovered on the same cause of action after the expiration of the two years.

ERROR to the Chancery Court of Tuskaloosa.
Heard before the Hon. W. W. MASON.

This bill was filed by Thomas J. Burke against the plaintiffs in error, to obtain the redemption of certain lands, which were sold under execution against James M. Dunlap, of whom the complainant claimed to be a judgment creditor.

The bill alleges, that the complainant obtained a judgment against said James M. Dunlap at the October term, 1846, of the

Circuit Court of Tuskaloosa county; that the said lands had been sold under an execution against said Dunlap, which was issued on an older judgment than complainant's, and were purchased by one Nancy McMillan, who was the plaintiff in said judgment; that said Nancy McMillan afterwards sold said lands to the defendant Barringer, as trustee for Mrs. Dunlap, the other defendant, and conveyed said lands to him as trustee; that complainant had made a tender 'to said Barringer of twenty dollars, the sum paid by Mrs. McMillan for said land at said execution sale, and the same sum paid by Barringer to her, together with ten per cent. advance thereon, and at the same time offered to credit his judgment against said Dunlap with the sum of $300, over and above the sum so tendered for redemption; that Barringer refused said tender and offer, and refused to allow plaintiff to redeem; that said sale under execution was made in September, 1846, and said offer to redeem in 1847, before the expiration of two years from the said sale; that Barringer also neglected and refused, for six months after said offer was made, to pay complainant said sum of $300, with which, as aforesaid, he had offered to credit his judgment against Dunlap.

The bill again makes a tender of the money, and prays that Barringer may be compelled to convey the land.

Barringer and Mrs. Dunlap are made defendants to the bill, and publication is prayed against the former, as a non-resident. Mrs. Dunlap answered the bill, admitting its most material allegations. She insists, however, that she is a *feme covert*, and gives the name of her husband, James M. Dunlap; that she has a separate estate, and that she advanced to Barringer the money with which to make said purchase out of her separate estate; that she is the beneficial owner of said land, and that the legal title only is in Barringer; and that the tender and offer to redeem, to be good in law, ought to have been made to her. She demurs to the bill, for want of proper parties, and for want of equity.

The complainant amended his bill, so as to make James M. Dunlap a party defendant. He also afterwards filed a supplemental bill, alleging that his judgment against James M. Dunlap, which was in force when the original bill was filed, has since that time been reversed by the Supreme Court;

that complainant has since brought a new suit against said Dunlap, on the same cause of action, and recovered another judgment, for a large amount than the first. This last judgment was recovered in 1850.

Mrs. Dunlap answers the supplemental bill, admitting the reversal of the first judgment, and demanding proof of the recovery of the second. She also insists, that no offer to redeem was or could be made under the second judgment, and that the tender and offer made under the first was not binding under the second judgment. She demurs to the supplemental bill, for want of equity, and because the case made by it "defeats the whole cause set forth in the original bill."

The proof sustains all the allegations of the original and supplemental bills. The Chancellor refused to dismiss the bill, held the tender sufficient, and decreed that complainant pay to the defendant the sum of $26 50, being the amount of the purchase money and ten per cent. thereon; and that, upon said payments being made, all the right and title of the defendants, in and to said lands, should vest in the complainant.

The errors assigned are:

1. That the court erred in rendering the decree shown, as the same is not authorized by the bill, answer and proof;

2. The court erred in refusing to dismiss the bill;

3. The court erred in refusing to sustain the demurrers to said original and supplemental bills, on the grounds set forth.

P. & J. L. MARTIN, for plaintiffs in error:

1. The tender was insufficient, because it was made to the trustee, instead of the *cestui que trust*. The land was purchased with Mrs. Dunlap's separate property, and was held by the trustee for her use and benefit. Barringer merely held the legal title.

2. No tender was made after the recovery of the second judgment; and none could be made under it, because the two years had expired before its rendition. The reversal of the first judgment destroyed the effect of the tender made under it. The complainant was not a *bona fide* creditor, within the meaning of the statute, until the rendition of his last judgment. Thomason v. Scales, 12 Ala., 309; 4 Humph., 371; McGavock v. Woods, 10 Yerger's Rep.

ORMOND & NICOLSON, contra:

1. The tender to the trustee was sufficient. The statute, Clay's Dig., 502, requires "the payment or the tender thereof" to be made to the "purchaser" of the land, "or to one claiming under him." Barringer, the trustee, was the purchaser, and complainant contends, was the proper person to whom the tender should have been made. There were but two persons who had any interest, Barringer and Mrs. Dunlap, who was a married woman; a tender to her would manifestly have been a nullity, as she could do no act which would prejudice her rights. If she had accepted the money, she could not have made the conveyance; and the whole scheme of the statute is, that the tender must be made to the person holding the legal title, and who can make the conveyance. Besides, if Mrs. D. had received the money, it would instantly have been the property of her husband, and it would have been the duty of the trustees to have repudiated the whole transaction, as its direct effect would have been to defeat the trust. It follows then that the tender to Barringer was well made, as he was the only person who could have received it without defeating the trust, and he was the only person who could make title.

2. Burke had reduced his debt against Dunlap to judgment before the tender was made, and it was a valid, subsisting judgment at the time the tender was made. Its bona fides was fully established at the time of tender. Scales v. Thomason, 12 Ala., 309. After the tender was made, however, and during the pendency of the present cause, a writ of error was sued out by Dunlap, and Burke's judgment reversed by the Supreme Court. Burke then instituted an action for money had and received, the cause of action being the same upon which his original judgment was founded, and recovered at the Fall term, 1850, of the Circuit Court, a judgment against Dunlap. The simple question then is, is the tender a good one, and can it be made available under the facts of the case. The fact that a second judgment has been obtained on the same cause of action, shows clearly that the reversal in the Supreme Court was upon a point not affecting the merits. The only requisition of the law is, that the person redeeming must be a bona fide creditor, that is, a judgment creditor.

The complainant was a judgment creditor at the time of the tender; he is so still. His character then as a *bona fide* creditor before the court is fully established. If, then, he was a *bona fide* creditor at the time the tender was made, and is so still, it seems to me his right to redeem is incontrovertible, unless, under the supposition that the judgment must keep up a continual lien; but our redemption law is not based upon such a principle. Pollard v. Taylor, 13 Ala., 604. As to rights acquired under voidable judgments, see Boren v. McGehee, 6 Porter, 432; Woodcock v. Bennet, 1 Cowen, 711.

Suppose that Barringer had accepted the money and made the conveyance; and finding out the defect in the judgment, had taken it up to the Supreme Court and reversed it; and that complainant had sued again, and procured judgment against Dunlap; could not complainant have defended successfully against any action brought against him to recover the land? For being in a condition to make a tender at the time he did, and being still in the attitude of a *bona fide* creditor at the time suit was brought, he would have a right to retain the land, being fully within the reasoning of the cases. Duncan v. Ware's Ex., 5 S. & P., 119; Roebuck v. Dupuy, 7 Ala., 486.

3. A supplemental bill was the proper manner to bring up the second judgment. Story's Eq. Pl., § 336.

PHELAN, J.—If the complainant desired to bring to the view of the court the facts connected with the reversal of the first judgment of Burke against Dunlap, and the rendition of the second, he could only do so by supplemental bill; since this is new matter, relating to the case made by the original bill, arising subsequent to the filing of that bill, and, therefore, not proper to be added by way of amendment of the original bill. Story's Eq. Pl., 268, *et seq.;* Mitford's, 49; Walker v. Hallett, 1 Ala., 379. The effect, however, of the new matter upon the case made by the original bill, remains to be considered.

The whole case then, as presented by complainant, Burke, is in brief as follows: Within the two years limited by law he offered to redeem the land purchased by Mrs. McMillan,

and sold by her to Barringer in trust for Mrs. Dunlap, in virtue of a judgment which he then held against James M. Dunlap, the defendant in execution, making said offer to Barringer, the trustee, and not to Mrs. Dunlap, the *cestui que trust*; after this offer to redeem, and after the filing of the original bill, the judgment of Burke against J. M. Dunlap was taken to the Supreme Court, on writ of error, by Dunlap, and reversed; subsequently to this a new action was brought by Burke against Dunlap, upon the same cause of action, and another judgment recovered before the final hearing in the court below.

Two questions present themselves: 1. Should the offer to redeem have been made to Barringer, who held the legal title, or to Mrs. Dunlap, the *cestui que trust?* 2. Will an offer by a creditor who holds a judgment at the time, which is subsequently reversed, but who afterwards brings a new suit on the same cause of action, and recovers a new judgment before the hearing in chancery, be held good, to entitle the party making the offer to the provisions of the statute, giving to creditors the right to redeem land which has been sold under execution?

When Barringer took the legal title in trust for the separate use of Mrs. Dunlap, who was then a married woman, he took it subject to all the conditions to which the law subjected lands "sold under execution." One condition was, to allow any *bona fide* creditor of James M. Dunlap, within two years from the time of the execution sale, to redeem the land that had been sold, by paying the amount bid at the execution sale, with ten per cent. interest per annum, and offering to credit the debtor with ten per cent. or more on the purchase money bid at said sale, and thereupon to convey, &c., to such creditor. The trustee in such a case is the only person that the law regards as having power to convey the legal title. Every trustee is bound to protect the interests of his *cestui que trust*, and in order to do this he is supposed to consult with him freely upon all matters touching his interest, before he does any act by which the *cestui que trust* may be affected. In doing what the law will compel him to do, he always consults the best interests of his *cestui que trust*, and avoids costs and trouble. The statute says, "on payment or

tender," &c., "to the purchaser or any one claiming under such purchaser," &c. Here the person having the beneficial interest is a married woman, who claims under the purchaser, Mrs. McMillan, not directly, but through a trustee, who holds the legal title from said purchaser. So far as the legal title is concerned, the trustee is in fact the person claiming from the purchaser; as, therefore, he is the only person who has power to convey when a tender is made, a tender to him is sufficient.

What would be the effect of a tender to the beneficiary in such a case, is a question not necessary now to be considered.

This bring us to the next question: Will a tender or offer to redeem, made while a judgment is in force, give a right to redeem after such judgment is reversed, if another judgment is recovered on the same cause of action, but after the expiration of the two years?

No creditor has a right to redeem, until he has reduced his demand to judgment; so that, although the statute says any "*bona fide* creditor" shall have the right to redeem, the courts have decided, for very strong and satisfactory reasons, that this can only mean a *bona fide* judgment creditor. Scales v. Thomason, 12 Ala. Rep., 309; Pollard v. Taylor, 13 Ala. Rep., 604.

But a judgment which is reversed, is, in contemplation of law, of no more force or virtue than if it had never existed, so far as respects the rights of the plaintiff in that judgment. It is regarded as a mere nullity. Dupuy v. Roebuck, 7 Ala., 484; Simmons v. Price, 18 Ala., 405; 21 Ala., 337. Every interest which depends upon it, belonging to the party in whose favor it was rendered, must share its fate and fall with it. If then, the judgment by a reversal becomes as if it never had been, the offer to redeem, which was dependent on it, is to be regarded in like manner as if it never had been made.

The terms prescribed by this statute must be strictly pursued, to entitle the creditor to redeem. 10 Smedes & M., 521; 7 Humph., 281; 5 Gilman, 171. The offer must be made by a *bona fide* judgment creditor within the term of two years from the date of the execution sale, or he will be barred. Here an offer was made within the time, upon a judgment which was afterwards reversed. That judgment thereby be-

came a nullity, and made the offer which grew out of it a nullity also. No other offer was ever made, as the record shows, but a new judgment on the same cause of action was recovered after the expiration of the two years. This offer, under the judgment which was reversed, could not survive the judgment out of which it grew, so as to give a right to redeem under this latter judgment; they cannot connect, as the one ceased to exist before the other had an existence.

That judgments upon which offers to redeem under the statute may be made should be liable to reversal for three years, and the right to redeem be limited to two, involves this right of redemption in some uncertainty; but if the foregoing principles are sound, it is not for the courts to apply the remedy.

Under the view we take of the last question discussed, the complainant was not entitled to redeem under the proof in the cause; and his bill, after the exhibition of the supplemental bill, should have been dismissed for want of equity.

Let the decree below be reversed, and a decree be rendered here dismissing the bill.